**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON**

| | | |
|---|---|---|
| HARRIS THOMAS INDUSTRIES, INC. | : | Case No: 3:06CV190 |
| Plaintiff, | : | |
| vs. | : | Magistrate Judge Sharon L. Ovington (By Consent of Parties) |
| ZF LEMFORDER CORPORATION, | : | |
| Defendant. | : | |

**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT (DOC. #24);ORDER GRANTING PLAINTIFF'S PARTIAL MOTION FOR SUMMARY JUDGMENT (DOC. # 40);ORDER DENYING DEFENDANT'S PARTIAL MOTION FOR SUMMARY JUDGMENT. (DOC. # 41)**

I.     INTRODUCTION

Harris Thomas Industries, Inc., ("Harris Thomas") an Ohio corporation brings this breach of contract action for payment of goods delivered and accepted against ZF Lemforder Corporation, ("ZF Lemforder"), a Delaware corporation with its principal place of business in Maine. ZF Lemforder answered Harris Thomas' Complaint and set forth its counterclaim alleging that Harris Thomas breached the parties' long term agreement and scheduling releases by failing to deliver parts and conversion of the tooling required to make those parts. This matter is before the Court upon Harris Thomas' Motion for Summary Judgment (Doc. # 24 ), ZF Lemforder's Response (Doc. # 26), Harris Thomas' Reply (Doc. # 39), Harris Thomas' Partial Motion for Summary Judgment on ZF Lemforder's Counterclaim (Doc. #40), ZF Lemforder's

Response and Partial Motion for Summary Judgment (Doc. # 41), Harris Thomas' Reply (Doc. # 44), and the record as a whole.

## II. SUMMARY JUDGMENT STANDARDS

As an initial matter, the Court will set forth the procedural standards it must apply whenever ruling on a motion for summary judgment, following which it will turn to the parties' arguments in support of and in opposition to their respective motions. Summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Of course, the moving party:

> always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact.

*Id.* at 323. See also *Boretti v. Wiscomb*, 930 F.2d 1150, 1156 (6th Cir. 1991) (The moving party has the "burden of showing that the pleadings, depositions, answers to interrogatories, admissions and affidavits in the record, construed favorably to the nonmoving party, do not raise a genuine issue of material fact for trial.") (quoting *Gutierrez v. Lynch*, 826 F.2d 1534, 1536 (6th Cir. 1987)). The burden then shifts to the nonmoving party who "must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) (quoting Fed. R. Civ. P. 56(e)). Thus, "[o]nce the moving party has met its initial burden, the nonmoving party must present evidence that creates a genuine issue of material fact making it necessary to resolve the difference at trial." *Talley v. Bravo Pitino Restaurant, Ltd.*, 61 F.3d 1241, 1245 (6th Cir. 1995). Read together, *Liberty Lobby* and *Celotex* stand for the

proposition that a party may move for summary judgment by demonstrating that the opposing party will not be able to produce sufficient evidence at trial to withstand a directed verdict motion (now known as a motion for judgment as a matter of law. Fed.R.Civ.P. 50). *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1478 (6th Cir. 1989).

Once the burden of production has so shifted, the party opposing summary judgment cannot rest on its pleadings or merely reassert its previous allegations. It is not sufficient to "simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). See also *Michigan Protection and Advocacy Service, Inc. v. Babin*, 18 F.3d 337, 341 (6th Cir. 1994) ("The plaintiff must present more than a scintilla of evidence in support of his position; the evidence must be such that a jury could reasonably find for the plaintiff."). Rather, Rule 56(e) "requires the nonmoving party to go beyond the [unverified] pleadings" and present some type of evidentiary material in support of its position. *Celotex Corp.*, 477 U.S. at 324. Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). Summary judgment shall be denied "[i]f there are ... 'genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party.'" *Hancock v. Dodson*, 958 F.2d 1367, 1374 (6th Cir. 1992) (citation omitted). Of course, in determining whether a genuine issue of material fact exists, a court must assume as true the evidence of the nonmoving party and draw all reasonable inferences in the favor of that party. *Anderson*, 477 U.S. at 255 (emphasis added). If the parties present conflicting evidence, a court may not decide which

evidence to believe, by determining which parties' affiants are more credible; rather, credibility determinations must be left to the fact-finder. 10A Wright, Miller & Kane, Federal Practice and Procedure, § 2726. In ruling on a motion for summary judgment (in other words, in determining whether there is a genuine issue of material fact), "[a] district court is not ... obligated to wade through and search the entire record for some specific facts that might support the nonmoving party's claim." *Interroyal Corp. v. Sponseller*, 889 F.2d 108, 111 (6th Cir. 1989), *cert. denied*, 494 U.S. 1091 (1990). See also *L.S. Heath & Son, Inc. v. AT&T Information Systems, Inc.*, 9 F.3d 561 (7th Cir. 1993); *Skotak v. Tenneco Resins, Inc*., 953 F.2d 909, 915 n. 7 (5th Cir.), *cert. denied*, 506 U.S. 832 (1992) ("Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment ...."). Thus, a court is entitled to rely, in determining whether a genuine issue of material fact exists on a particular issue, only upon those portions of the verified pleadings, depositions, answers to interrogatories and admissions on file, together with any affidavits submitted, specifically called to its attention by the parties.

### III. FACTUAL BACKGROUND

Plaintiff, Harris Thomas, was in the business of forging precision steel parts for sale to automotive industry suppliers. Defendant, ZF Lemforder is engaged in the business of manufacturing automotive components. The duration of the parties business relationship lasted approximately 7 years and 3 months until March of 2006 when Harris Thomas announced that it was going to shut down operations.

A.  **The 1998 Blanket Purchase Order**

Since approximately 1998, ZF Lemforder was a customer of Harris Thomas.[1] In September of 1998, ZF Lemforder issued a blanket purchase order to Harris Thomas for the production of the GM 32 paddle. (Doc. # 26-2, Kinney Affidavit at ¶5 and attached Exhibit A). The expiration date on face of the blanket purchase order was "00/00/9999". During the course of the parties' relationship, ZF Lemforder periodically issued to Harris Thomas orders referred to as Scheduling Agreement Releases specifying delivery dates and quantities. (Doc. # 26-4, Davenport Affidavit at ¶6) .

There is no dispute that the Scheduling Agreement Releases governed the quantity and dates of delivery. The 1998 blanket purchase order makes clear that ZF Lemforder never guaranteed to buy the target quantity/estimated annual usage that would be listed on the Scheduling Agreement/Blanket Purchase Order - - it was simply an estimate. (Doc. # 40, Scheduling Agreement attached as Exhibit C ). Instead Harris Thomas was directed to see the Scheduling Agreement Releases for product quantities and dates for delivery. From time to time the parties agreed to a change in the price per unit. The price per unit set out in the blanket Purchase order was $2.19 per unit. In March of 2006 the agreed upon price was $2.59 per unit. (Doc. # 26 at 2).

Harris Thomas was not ZF Lemforder's exclusive supplier of the GM 32 paddle; ZF Lemforder also used a Chinese supplier known as King Duan to supply approximately 50% of ZF Lemforder's requirements. (Doc. # 37, Davenport Deposition at p. 25) and (Doc. # 36 Daigle

---

[1] Harris Thomas supplied ZF Lemforder with four component parts including what was referred to as the GM 32 paddle, the only part that was still in series production in March 2006. (Doc. # 26-2, Kinney Affidavit at ¶12).

5

Deposition at pp. 36-37).

In the first quarter of 2006, ZF Lemforder Corporation ordered and accepted shipments of certain parts from Harris Thomas and was to pay Harris Thomas $162,920.59 for those parts. (Doc. #1, Plaintiff's Complaint at ¶6; Doc. # 10, Defendant's Amended Answer at ¶6). ZF Lemforder admits that it owes Harris Thomas $162,920.59, but has refused to pay because it claims an offset based upon the value of its counterclaims. (Doc. # 40, Defendant's Responses to Plaintiff's Request for Admissions and Answers to Interrogatories attached as Exhibit 2). The parties' dispute over ZF Lemforder's counterclaims arises as follows.

### B. Harris Thomas' Notice of Intent to Discontinue Operations

Due to increased competition from foreign suppliers, Harris Thomas experienced financial difficulties and, in early March 2006, decided it would need to begin winding down its operations. On March 10, 2006, Harris Thomas gave notice of this to ZF Lemforder by letter. (Doc. # 26-2, Kinney Affidavit at ¶13). On March 15, 2006, Harris Thomas held a meeting with ZF Lemforder in which it announced that unless certain financial demands were met, Harris Thomas would cease operations on or about March 17, 2006. (Doc. # 41, Kinney Affidavit, Exhibit C). Subsequently, the parties engaged in a series of discussions regarding additional deliveries of GM32 paddle forgings at an increased price but were unable to come to agreement on pricing and scheduling of delivery. (Doc. # 26-4, Davenport Affidavit at ¶13). On March 21, 2006, ZF Lemforder employee, Mark Davenport, sent an e-mail to Harris Thomas stating:

> If by chance an agreement is made tomorrow March 22nd, what would the timeline be to receive 35,000 to 40,000 pcs of the GMT 32 Paddle Housing? Would there be any issues getting raw material from your steel supplier? Would there be any issues getting parts from your heat treat source? Can you let me know as soon as possible. Thanks.

(Doc. # 40, Exhibit I). The next day, on March 22, 2006, Harris Thomas responded to ZF Lemforder's question outlining a possible shipping schedule for the 40,000 pieces referenced in Mr. Davenport's e-mail contingent upon reaching agreement on other matters and subject to resolving steel supply and heat treating issues.  (Doc. # 40, Exhibit J).  Harris Thomas followed up on another proposed shipping schedule for an additional 56,000 pieces on March 23, 2006. (Doc. # 40, Exhibit K). On March 31, 2006, ZF Lemforder Plant Manager, Keith Kinney, received another e-mail revising the shipping schedule. Doc. # 40, Exhibit L).

   C.  **Scheduling Agreement Release Number 66**

As of March 10, 2006, the only Scheduling Agreement Release outstanding from ZF Lemforder to Harris Thomas was Release Number 66. This Release had delivery date requirements of March 3, 2006, March 10, 2006, March 17, 2006 and March 24, 2006. (Doc. # 40, Release Number 66 attached as Exhibit F). According to Harris Thomas, as of March 17, 2006 it had complied with all requirements listed in Release Number 66 except for the March 24, 2006 delivery of 9,000 forgings. (Doc. # 40 at 3). This assertion is contradicted by the Affidavit of Mark Davenport which states that an additional 19,115 pieces of the GM 32 paddle were still due and owing. (Doc. # 41, Davenport Affidavit, Exhibit 2). In response, Harris Thomas submitted the Affidavit of Edward Case who states that Harris Thomas actually shipped more parts than the final releases called for. (Doc. # 43, Affidavit of Edward Case, Exhibit D).

   D.  **Scheduling Agreement Release Number 67**

ZF Lemforder did not send Harris Thomas any Scheduling Agreement Release after the March 1, 2006 Release (Release Number 66) with one exception: a release sent on March 22, 2006, after ZF Lemforder knew of Harris Thomas' financial situation and intentions to

7

discontinue operations. This March 22, 2006 Release No. 67 called for 100,000 parts - - a much larger amount compared to past Scheduling Agreement Releases. Although the parties continued to dicker as to possible new terms, including an increased price in order to produce additional parts, Harris Thomas did not specifically reject Release Number 67. Eventually, ZF Lemforder opted to use Trenton Forging as a new supplier for the GM32 paddle and had Trenton Forging fulfilled its needs. Davenport Affidavit at ¶13; Kinney Affidavit ¶23. The record does not indicate the date that Harris Thomas actually ceased operations.

### IV. ANALYSIS

#### A. Plaintiff's Motion for Summary Judgment

Plaintiff claims that it should be paid for the parts shipped, used and not rejected by Defendant in the amount of $162,920.59. Pursuant to Ohio Revised Code § 1302.65(A) a buyer must pay at the contract rate for any goods accepted. In it's Response to Plaintiff's Motion for Summary Judgment Defendant states that "...it is clear and has never been disputed by ZF that Harris Thomas shipped goods to ZF and ZF accepted and received those goods and has not issued payment for those goods." (Doc. # 26 at 1). The Defendant's failure to pay for the goods is a breach of contract, for which Harris Thomas is entitled to damages. It is thus without dispute that Plaintiff is entitled to summary judgment on its claims for goods received and accepted. Accordingly Plaintiff's Motion for Summary Judgment (Doc. # 24 ) is granted.

#### B. The Parties' Cross Motions for Partial Summary Judgment

Harris Thomas argues that it is entitled to summary judgment on ZF's counterclaim alleging breach of contract. First, Harris Thomas asserts that the Blanket Purchase Order is not a requirements contract and the only enforceable contract between the parties ended with Release

Number 66. (Doc. # 40 at 5).  ZF Lemforder argues that it is entitled to summary judgment because of the breach of Release 66 when Harris Thomas failed to deliver parts as required.  ZF further claims that summary judgment is appropriate due to Harris Thomas' failure to give reasonable notice of its intent to terminate the 1998 Blanket Purchase Order. (Doc. 44 at 1-2).

1. **The Blanket Purchase Order is Not a Requirements Contract obligating Harris Thomas to deliver parts for the life of the parts**

ZF argues that the Blanket Purchase Order governs the relationship of the parties and obligated Harris Thomas to supply the parts set forth in the purchase order for the life of each part.

However, the Sixth Circuit has held that where there is a blanket purchase order in effect, but material releases are issued which govern supply and delivery, the only contracts are the releases that have been accepted between the parties. *Advanced Plastics Corp. v. White Consolidated Industries, Inc.*, Case No. 93-2155, 1995 U.S. App. LEXIS 1047 (6th Cir., January 18, 1995).  See *also, Goodyear Tire and Rubber Co. v. Chiles Power Supply, Inc.,* 7 F.Supp.2d 954, 960 (N.D. Ohio, June 3, 1998) (holding that the parties had separate contracts for each shipment of product.)

In *Advanced Plastics*, the company manufactured plastic refrigerator parts for White Consolidated, a refrigerator manufacturer. 1995 U.S. App. LEXIS 1047 at *1. When White Consolidated wanted a part from Advanced Plastics, it would submit a blanket purchase order that specified the part but not the quantity. *Id.* at *2. White Consolidated would then submit individual releases to specify the quantity desired at a particular point in time. *Id.*  During the course of the parties' relationship, White Consolidated decided to consolidate its supplier base by moving from Advanced Plastics to another supplier. *Id.*  As of the date White Consolidated notified Advanced

Plastics of the decision to switch suppliers, Advanced Plastics had filled all outstanding releases. *Id.*

Advanced Plastics claimed breach of contract arguing that it had a contract to supply parts to White Consolidated based on the blanket purchase order which operated as an enforceable "requirements" contract between the parties. This contention lacked merit however, because the blanket purchase order contained the language, "Seller agrees to furnish Buyer's requirements for the goods or services covered by this Purchase Order to the extent of and in accordance with....Buyer's written instructions." *Id.* at *5. The "written instructions" were the releases. *Id.* The Court held that "the language of the document clearly demonstrates that the parties intended for White Consolidated to purchase quantities of parts only according to its releases..." *Id.* at *6. Therefore, despite the existence of a blanket purchase order, the parties' relationship was governed by the separate releases. Similarly, the Blanket Purchase Order between Harris Thomas and ZF Lemforder provides "see your separate Scheduling Agreement Release for detailed quantities and dates." Thus, just like the purchase order in *Advanced Plastics,* the language of the Scheduling Agreement clearly demonstrates that the parties intended for ZF Lemforder to purchase quantities of parts only according to its later-issued releases. ZF Lemforder employee Mark Davenport testified, "once we send the material release and we provide them [Harris Thomas] with the numbers that are firm in that 4-week zone, typically what they - - what most suppliers would do is give us a call and say, well, yes we can meet those releases." (Doc. # 37 , Davenport Depo., at p. 23). Accordingly, ZF Lemforders argument that it is entitled to summary judgment based on the breach of the 1998 Purchase Order by failing to give reasonable notice of termination is without merit and is denied. The separate Releases, not the Blanket Purchase Order governed the contractual obligations of the parties.

**2. Material issues of fact preclude summary judgment in favor of ZF on its claim of breach of Release Number 66**

According to Harris Thomas, as of March 17, 2006 it had complied with all requirements listed in Release Number 66 except for the March 24, 2006 delivery of 9,000 forgings. (Doc. # 40 at 3). This assertion is contradicted by the Affidavit of Mark Davenport, which states that an additional 19,115 pieces of the GM 32 paddle were still due and owing. (Doc. # 41, Davenport Affidavit, Exhibit 2). In response, Harris Thomas submitted the Affidavit of Edward Case who states that Harris Thomas actually shipped more parts than the final releases called for. (Doc. # 43, Affidavit of Edward Case, Exhibit D). ZF Lemforder strongly urges the Court to reject Case's Affidavit as wholly incredible, especially in light of Harris Thomas' statement in its pleadings that it had not delivered all parts required under Release Number 66. However, the Court cannot judge credibility and that issue, as well as whether ZF Lemforder was entitled to seek cover as a result of such failure of delivery, remains for trial.

**3. Release Number 67 was never accepted by Harris Thomas and did not create a binding contract**

ZF Lemforder argues that Release Number 67 was never rejected by Harris Thomas and that it was therefore contractually bound to produce those parts at the stated price rather than the increased price Harris Thomas demanded. Correspondence between the parties on March 21, March 22, March 23, and March 31, 2006 as well as the Affidavits of Keith Kinney and Mark Davenport demonstrate that Harris Thomas never accepted Release No. 67. Despite the fact that there was never a meeting of the minds regarding pricing, supply and delivery of the forgings on Release No. 67, ZF Lemforder alleges Harris Thomas breached this contract and it seeks to hold Harris Thomas liable for the costs of covering the large quantity of forgings on that Release. Since Harris Thomas never accepted and

11

accordingly did not breach any obligation related to Release No. 67, Harris Thomas is entitled to Summary Judgment to the extent the Defendant's counterclaim is based upon Release Number 67.

In conclusion, the Court finds as follows:

1. Harris Thomas is entitled to payment of $162,920.59 as requested in its complaint. However, the Court shall refrain from entering final judgment on this claim pursuant to Fed. R. Civ. Pro. 54(b). Accordingly, Plaintiff's Motion for Summary Judgment (Doc. # 24) is GRANTED.

2. A genuine issue of fact remains as to whether Harris Thomas breached Release Number 66. Defendant's Partial Motion for Summary Judgment. (Doc. # 41) is DENIED.

3. Harris Thomas' Partial Motion for Summary Judgment on ZF Lemforder's Counterclaims (Doc. #40) is GRANTED as it relates to the Blanket Purchase Order and Release Number 67.

4. A genuine issue of fact remains as to Defendant's Counterclaim for conversion of the tooling.

October 19, 2007                              s/Sharon L. Ovington
                                              Sharon L. Ovington
                                              United States Magistrate Judge